HILL WALLACK LLP
Jeffrey G. DiAmico, Esquire
Attorney I. D. No. 84316
777 Township Line Road, Suite 250
Yardley, PA 19067
215-579-7700
jgd@hillwallack.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Global Printing Equipment, Inc.<br>121 Friends Lane<br>Newtown, PA 18940,<br>    Plaintiff<br>    vs.<br><br>Knights Complete Printing Solutions, Inc.<br>20654 Burl Ct.<br>Joliet, IL 60433,<br>    Defendant | : : : : : : : : : : : : | CIVIL ACTION<br><br>NO.<br><br><br><br><br>**COMPLAINT** |

## PARTIES

1. Plaintiff, Global Printing Equipment, Inc. ("Global Printing"), is a business corporation organized and existing under and by virtue of the laws of the State of New Jersey, and is registered and authorized to do business in the Commonwealth of Pennsylvania, with its principal place of business located at 121 Friends Lane, Newtown, Pennsylvania 18940.

2. Defendant, Knights Complete Printing Solutions, Inc. (Knights"), upon information and belief, is a business corporation organized and existing under and by virtue of the laws of the State of Illinois, with its principal place of business located at 20654 Burl Ct., Joliet, Illinois 60433.

## JURISDICTION AND VENUE

3. Jurisdiction is vested in the Court of the United States pursuant to 28 U.S.C. §1332 in that Global Printing and Knights are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. Venue is vested in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 in that the Eastern District is the location in which occurred the substantial events giving rise to Global Printing's cause of action.

## COMPLAINT

### COUNT I - Breach of Contract

5. At all times relevant hereto, Global Printing has been engaged in the business of the purchase and sale of printing equipment throughout North America.

6. On or about June 28, 2006 Global entered into a Sales Agreement with LTI Printing ("LTI") for the purchase and installation of a 1993 Roland 608+ LE S/N (hereinafter "Printing Press") at LTI's location at 518 N. Centerville Road, Sturgis, Michigan 49091.

7. The total purchase price being paid by LTI to Global for the Printing Press was to be $325,000.00. A true and correct copy of the Sales Agreement by and between LTI and Global Printing is attached hereto as Exhibit "A".

8. Thereafter, in or about October and November, 2006, Knights contacted Global Printing at Global Printing's offices located in Pennsylvania in order to solicit business from Global Printing in connection with Knights refurbishing of the Printing Press on behalf of Global Printing for the benefit of LTI.

9. Following Knight's initial contact with Global Printing, Knights continued to communicate with Global Printing via telephone, email, and mail, for the purpose of negotiating a contract for providing services to Global Printing for the refurbishing of the Printing Press.

10. Knights personally examined the Printing Press in order to determine what work was necessary in order to refurbish the Printing Press.

11. Thereafter, in or about November 2006, Knight's forwarded a written proposal to Global Printing detailing the costs and associated work necessary in order to refurbish and repair the Printing Press to a condition that would be commercially acceptable for LTI to operate and

2

run the Printing Press ("Proposal"). A true and correct copy of the Proposal by and between Knights and Global Printing is attached hereto as Exhibit "B".

12. On or about November 7, 2006, Global Printing accepted and executed the Proposal in Global Printing's offices located in Pennsylvania.

13. Pursuant to the Proposal Knights was also required to run a "demo" of the Printing Press in order to print test it to make sure that the Printing Press would be commercially acceptable for LTI.

14. Pursuant to terms of the Proposal, "all work [was] guaranteed to be as specified, and the [refurbish and repair] work [was to be] completed in a substantial workmanlike manner for the sum" totaling $71,500.00.

15. Thereafter, Global Printing and Knights agreed that in addition to refurbishing and repairing the Printing Press to a condition that would be commercially acceptable for LTI to operate and run the Printing Press, Knights would also install, start-up and commission the Printing Press for commercial production for the total cost of $25,000.00.

16. During the course of Knights' work to refurbish and repair the Printing Press, Knights continuously contacted Global Printing advising them of additional work that needed to be performed on the Printing Press in order for it to be operational for LTI's purposes.

17. LTI issued invoices and estimates to Global Printing in Pennsylvania, for additional work which needed to be performed above and beyond the work set-forth in the Proposal.

18. Both orally and in writing, by virtue of Knights' issuing additional invoices and Global Printing paying for the services and/or materials detailed on such invoices, the parties entered into additional written and/or oral contracts in order for Knights to do the necessary work to refurbish and repair the Printing Press to a condition that would be commercially acceptable for LTI to operate and run the Printing Press.

3

19. Despite Global Printing paying Knights sums well in excess of the Proposal, at the time the Printing Press was to be installed at LTI's location, it became apparent that there was a problem with the work performed by Knights since the Printing Press failed to operate.

20. Knights attempted to install the Printing Press over a three (3) week period, but was never able to do so, as the Printing Press was never fully operational and never went into production for LTI.

21. As a result of Knights failure to properly refurbish, repair and install the Printing Press, the Printing Press exploded during the installation process causing extensive and substantial damage to the Printing Press and its component parts.

22. Further as a result of Knights failure to properly refurbish, repair and install the Printing Press, Global Printing was required to remove the Printing Press from LTI's location, and to refund the $325,000.00 purchase price to LTI.

23. In addition to foregoing, after the Printing Press failed to operate, Knights' surreptitiously and without Global Printing or LTI's knowledge or consent, removed certain essential component parts of the Printing Press in order to hold Global Printing hostage for the payment of the alleged balance owed for the installation of the Printing Press.

24. Upon information and belief, Knights took from the Printing Press eight (8) carriage bars, the main electric drive circuit board and various other component parts.

25. Global Printing paid Knights the sum of $151,612.83, in connection with the refurbishing, repairing and installing of the Printing Press at LTI's location, an amount well in excess of the contracted for amount between the parties.

26. Knights is in material breach of the agreement with Global Printing in that the work performed by Knights was not done in a good and workmanlike manner; was faulty and of inferior quality; and/or failed to comply with the Proposal as well as the written and oral agreements between the parties.

...

27. Knights' material breaches include the following:

  a. failing to complete the work outlined in the Proposal in a timely fashion;

  b. failing to complete the work outlined in the Proposal for the agreed upon price;

  c. failing to perform certain of the work outlined in the Proposal pursuant to commercially acceptable standards;

  d. overcharging Global Printing for work performed in connection with refurbishing, repairing and installing the Printing Press; and

  e. faulty and inferior workmanship performed by Knights;

28. As a result of Knights' material breaches, Global Printing has suffered and will continue to suffer the following damages:

  a. $151,612.83 - total paid to Knights for refurbishing, repairing and installing the Printing Press;

  b. $35,000.00 – total cost to Global Printing to remove the Printing Press from LTI's location and truck back to Global Printing;

  c. $402,000.00 – total cost to purchase eight (8) carriage bars, the main electric drive circuit board and various other component parts each and all necessary to repair the Printing Press for resale;

  d. $55,000.00 – total labor costs to re-erect, repair and test the Printing Press for resale;

  e. $95,000.00 – total lost commission on the sale of a Roland 306 printing press Global Printing was to receive in trade from LTI; and

  f. $47,000.00 – total lost profit on the sale of the Printing Press to LTI since they did not keep the Printing Press after Knights substantially damaged the Printing Press during its repair and installation.

29. As a result of Knights' material breaches, Global Printing has suffered and will continue to suffer damages in the total amount of $785,612.83.

WHEREFORE, Plaintiff, Global Printing Equipment, Inc., requests this Honorable Court to enter judgment in its favor and against Defendant, Knights Complete Printing Solutions, Inc., and award Plaintiff compensatory and consequential damages in the amount of $785,612.83 plus interest and costs of this action, and any other relief this Court deems appropriate.

## COUNT II – Conversion

30. Global Printing incorporates the allegations contained in paragraphs 1 through 29 by reference as if fully set forth herein at length.

31. Knights' surreptitiously and without Global Printing or LTI's knowledge or consent, removed certain essential component parts of the Printing Press in order to hold Global Printing hostage for the payment of the alleged balance owed for the installation of the Printing Press.

32. Upon information and belief, Knights took from the Printing Press eight (8) carriage bars, the main electric drive circuit board and various other component parts.

33. The costs to replace the eight (8) carriage bars, the main electric drive circuit board and various other component parts which Knights absconded from Global Printing by virtue of removing said items from the Printing Press is $402,000.00.

34. Notwithstanding Global Printing's numerous demands, Knights has refused to return the above-referenced items or pay for the costs to replace same.

WHEREFORE, Plaintiff, Global Printing Equipment, Inc., requests this Honorable Court to enter judgment in its favor and against Defendant, Knights Complete Printing Solutions, Inc., and award Plaintiff compensatory and consequential damages in the amount of $402,000.00 plus interest and costs of this action, and any other relief this Court deems appropriate.

Respectfully submitted,

HILL WALLACK LLP

Date: 12/21/07

BY: _____
Jeffrey G. DiAmico, Esq.
Attorney for Plaintiff
HILL WALLACK LLP
777 Township Line Road, Suite 250
Yardley, PA 19067
(215) 579-7700
jgd@hillwallack.com

## **VERIFICATION**

I, JEFFREY VARGO, being duly affirmed according to law, depose and say that I am the President of Global Printing Equipment, Inc., the Plaintiff named herein; that as such, I am authorized to make this Verification; and that I verify that the statements made in the foregoing Complaint are true and correct to the best of my personal knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

DATE: 12/21/07

Jeffrey Vargo, President
Global Printing Equipment, Inc.

# EXHIBIT A

# GLOBAL PRINTING EQUIPMENT, INC.

121 FRIENDS LANE • SUITE 600 • NEWTOWN, PA 18940
(215) 579-7522 TEL. • (215) 579-7532 FAX
e-mail: peivargo@aol.com • www.globalprintingequipment.com

## SALES AGREEMENT

| | |
|---|---|
| DATE: | June 28, 2006 |
| PURCHASER: | LTI Printing |
| Address: | 518 N. Centreville Road |
| City, State: | Sturgis, MI 49091 |
| | |
| SELLER: | Global Printing Equipment, Inc. |
| Address: | 121 Friends Lane, Suite 600 |
| City, State | Newtown, PA 18940 |

<u>Seller sells to buyer following machine(s):</u>

EQUIPMENT # 1:    1993 ROLAND 608+ LE    S/N
                  SEE ADDENDUM A – EQUIPMENT DETAILS

PRICE:    *$325,000.00. Price includes delivery and installation with a print and register to commercial standards. Press to be cleaned, painted where necessary, thoroughly mechanically and electrically checked and gone through as well as new rollers installed. Price also includes a 60 day limited warranty on parts and service. Title and ownership of above equipment to transfer to LTI Printing when equipment is paid in full. LTI Printing to trade-in Roland 306 with s/n 4808B/7634 for trade-in value of $300,000.00. Payment terms below indicate capital investment by LTI Printing during refurbishing process. Sale subject to acquisition of Roland 608+ LE by Global Printing Equipment. Customer to provide suitable foundation and power to equipment.

*Both parties agree and understand that the price could either increase or decrease, though not to exceed 10% of the selling price. This will be determined after inspection of said press and the determination of the extent of refurbishing required. Both parties have the right to agree on any pricing change at that time.

| | |
|---|---|
| Price of Roland 608 + LE: | $325,000.00 |
| <u>Less Roland 306 trade- in:</u> | <u>-$300,000.00</u> |
| Cash Due: | $ 25,000.00 |

TERMS OF PAYMENT:

| | |
|---|---|
| $ 25,000.00 | deposit due upon signed agreement to hold machine |
| $ 50,000.00 | due upon removal of Roland 608 + LE from current location |
| $ 50,000.00 | due upon start of refurbishing process for Roland 608 + LE |
| -$100,000.00 | Cash refund to LTI Printing upon removal of Roland 306 |

Within 5 days after the arrival of the property at its destination, Purchaser agrees to afford Seller an opportunity to supervise the erection of the property. The purchaser agrees to supply suitable foundation for the prompt completion of such erection. If Purchaser does not, Purchaser agrees that the entire purchase price shall be paid within 10 days after said arrival.

Purchaser agrees not to remove or permit the removal of the property specified herein or any part thereof from the County of _____ State of <u>Michigan</u> nor to sell, assign, transfer, sublet, part with possession of, mortgage, hypothecate, or in any way encumber the property either directly or indirectly, without the written consent of Seller, until all moneys payable and all notes given by the Purchaser, together with all interest, insurance premiums and all other charges due the Seller as provided herein shall have been fully paid and satisfied.

Accepted by:

_____    _____
Global Printing Equipment    Date        LTI Printing    Date  6-30-06

# GLOBAL PRINTING EQUIPMENT, INC.

121 FRIENDS LANE • SUITE 600 • NEWTOWN, PA 18940
(215) 579-7522 TEL. • (215) 579-7532 FAX
e-mail: peivargo@aol.com • www.globalprintingequipment.com
*Specializing in Sheetfed Offset Printing Presses • Sales • Parts • Service*

### ADDENDUM "A"

### DESCRIPTION OF PRESS:

**1993 MAN ROLAND 608 + LE    8/C**                                          **28" X 40"**
Epic Dampeners
RCI Console
Baldwin Refrigeration and Recircuation
Chilled Vibrators
Tower Coater

**BANK DETAILS:**

Sovereign Bank
210 Smith St.
Perth Amboy, NJ 08861
Account # - 1061092836
ABA # - 231372691
Account Name: Global Printing Equipment

_____          Date 6-30-06
LTI Printing, Inc.
        Pres

# GLOBAL PRINTING EQUIPMENT, INC.

121 FRIENDS LANE • SUITE 600 • NEWTOWN, PA 18940
(215) 579-7522 TEL. • (215) 579-7532 FAX
e-mail: peivargo@aol.com • www.globalprintingequipment.com
*Specializing in Sheetfed Offset Printing Presses • Sales • Parts • Service*

## SCHEDULE "B"
## SHEETFED PRESS INSTALLATION SPECIFICATIONS
## PURCHASER'S RESPONSIBILITY

1. Provide all permits or licenses, which may be required by local governments for completion of any phase of the installation.

2. Provide completed foundation(s), wiring trenches, trench covers, raceway, oil drip pan, and building modifications as required for the installation and operation of the equipment.

3. Remove and/or relocate existing piping, lighting fixtures, conduit, ductwork, etc., if required for clearances of press and auxiliary equipment.

4. Provide access and a clear construction area for the movement and installation of the press with adequate adjacent storage area for components during the installation.

5. PRESS POWER:
   Provide an adequate source of electrical power (including wire, conduit, raceway, etc.), through the transformer (if required), through the controller, up to the main drive motor and press electrical boxes.

   OPTIONAL EQUIPMENT:
   Purchaser will also provide power lines up to the manufacturer's connection points of all auxiliary equipment (Such as: Offset Spray Units, Ink Agitators, Dryers, Refrigeration Units, Etc.)

   MATERIAL AND LABOR:
   Any labour relating to the custom makeup of conduit, wire, raceway, or any wiring material that is not provided by the seller, will be the customer's responsibility.

6. Provide any modifications to existing pressroom lighting, moisture control, air conditioning, heating, and noise control, etc., which may be required for proper operating conditions.

7. Provide paper, ink, supplies, and a press crew as may be required for the testing and start-up of the press.

8. Provide a minimum of one (1) employee to assist during the entire installation.

9. Provide a secure area with a telephone (such as an office) for the purpose of co-ordination, conducting business, and storing of drawings, tools, clothing, computer programs, etc.

10. Provide compressed air, if required, including the labour cost to install it

11. All air pumps will be installed at the press. If the purchaser wishes to locate them in any other location, it must be done by the purchaser after the press has been accepted.

12. Delay in delivery of accessories due to long lead-time from point of manufacture shall in no way delay press acceptance if press is operable without accessories.

# GLOBAL PRINTING EQUIPMENT, INC.

121 FRIENDS LANE • SUITE 600 • NEWTOWN, PA 18940
(215) 579-7522 TEL. • (215) 579-7532 FAX
e-mail: peivargo@aol.com • www.globalprintingequipment.com
*Specializing in Sheetfed Offset Printing Presses • Sales • Parts • Service*

## SCHEDULE "B"
### SHEETFEDPRESS INSTALLATION SPECIFICATIONS
### SELLER'S RESPONSIBILITY

1. Seller shall ship all press and accessory equipment included in sales agreement dated _____, (herein referred to as equipment) F.O.B. Purchaser's plant, including in-transit insurance.

2. Seller shall install the equipment and shall be responsible for its installation.

3. All work shall be performed on the basis of a forty- (40) hour workweek in accordance with the purchaser's work schedule unless otherwise specified in the sales agreement.

4. Seller shall reserve the right to subcontract any or all of the various phases of work contained herein. Such subcontracting shall not relieve seller of any obligations hereunder.

5. Seller shall receive, unload, provide all rigging, move into place and mechanically erect all equipment included in the Sales Agreement.

6. Seller shall install all electrical wiring that is provided by the manufacturer including wiring between units, delivery, feeder, and console.

7. Seller shall furnish and install the equipment as defined on the Sales Agreement with the following limitations:

   Dampener solution tanks and circulators to be mounted immediately adjacent to the printing units on the gear side of the press.

   Console to be placed no more than ten (10) feet from the delivery end of the press.

_____
Signature (Purchaser) LTI Printing

6 /30 /06
Date

_____
Signature (Seller)

___/___/___
Date

Page 2 of 2

# EXHIBIT B

*Knights Complete Printing Solutions Inc.*

708-372-5901 (Cell)
708-301-6473 (Office/Fax)
djknights@attbi.com

**I want to thank you for the opportunity to provide you with a proposal for the following job.**

Work to be performed at
Global Printing Equipment
121 Friends Land Suite 600
Newtown, PA 18940

Knights Complete Printing Solutions, Inc. proposes to perform all labor necessary for the completion of:

Unload one Roland 608 at KCPS Inc. in Joliet Il. $CO_2$ clean remaining 2 units, coater, delivery, 3 inkers, catwalks, pumps, water units, control cabinets, etc. Set press up in KCPS Inc warehouse. Electrostatic paint, units, catwalks, delivery, feeder, coater, and control cabinets.

Tune up press: reset infeed grippers, delivery grippers, impression grippers, coating grippers, change out worn camfollowers, Rejigg 27 carriage bars, option A. Check travel times between units. Change hoses and water lines.

Reconnect press electrically and mechanically. Fill press with oil. Run main power to press. Demo press.

Disconnect press electrically and mechanically. Skid feeder, delivery. Pack all misc. parts pertaining to press. Spray press down with rust preventative solution. Plastic and shrink wrap. Load onto truck supplied by customer.

All work is guaranteed to be as specified, and the above work is being completed in a substantial workmanlike manner for the sum of:    Dollars ($ 71,500 Seventy One Thousand Five Hundred Dollars )

**Note: Price does not include new rubber rollers through press, ink, coating, paper and any internal parts pertaining to the smash up of press.**

Terms of Payment: 50% due upon job start, 25% due upon startup of press in KCPS Inc warehouse, Balance due upon load out of press from KCPS Inc. warehouse.

## Acceptance of Contract

Accepted: _Jeffrey K. VARGO_    Signature: _[signed]_

Date: _11/07/06_    Signature: _[signed]_

Any alteration or deviation from the above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above this estimate. The performance of service covered by this proposal is contingent upon the non-occurrence of accidents, sickness or similar delays beyond our control. Knights Complete Printing Solutions Inc. is not responsible for any cracks in existing concrete or sustained in connection with the performance of this proposal.